(63 South. 892.)

No. 19,527.

SHARP v. McBRIDE.

(Dec. 15, 1913.   On Application for Rehearing, Jan. 5, 1914.)

*(Syllabus by the Court.)*

1. JUDGMENT (§ 594*)—SEVERANCE—BAR TO SUBSEQUENT ACTION — EMPLOYMENT CONTRACT.

Where one files a suit for a specified sum as salary as an overseer on a plantation and alleges that in addition to that sum he was to receive under his contract of employment a percentage of the net proceeds of the crop, not yet sold, and reserves his right to sue for his percentage of the proceeds, he has a right to bring another suit for his share of the proceeds of the crop, although he has already recovered the stipulated sum due him as salary, and an exception to the suit alleging that he has remitted his share of the proceeds of the crop by filing his first suit was properly overruled. The stipulated sum and the percentage of the proceeds of the crop were separable sums and demandable at different times, and so a suit for one amount did not have the effect of remitting the other.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1109; Dec. Dig. § 594.*]

2. MASTER AND SERVANT (§ 80*) — EMPLOYMENT CONTRACT — ACTION BY OVERSEER — BURDEN OF PROOF.

Where one alleges that under a contract he was to receive a percentage of the proceeds of a crop, after all expenses had been paid by the owner of the plantation, and shows what the proceeds of the crop were, it is incumbent on the owner, who has a knowledge of the expenditures, to show what the expenses were, and the burden of proving them is upon him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 107-127; Dec. Dig. § 80.*]

3. MASTER AND SERVANT (§ 70*) — EMPLOYMENT CONTRACT—CONSTRUCTION.

Where a planter enters into a contract with an overseer, promising him that he will give him a percentage of the proceeds of a crop, the planter must sell the crop in the way that crops of that kind are usually sold.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 82-86; Dec. Dig. § 70.*]

4. MASTER AND SERVANT (§ 71*) — EMPLOYMENT CONTRACT—PROPORTION OF CROP.

Where a planter holds his crop for a better price and obtains it, the overseer who was to receive a proportion of the proceeds of the crop and has been thereby benefited should pay to the planter the legal rate of interest on the money used by the planter in keeping the crop.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 89; Dec. Dig. § 71.*]

5. MASTER AND SERVANT (§ 73*)—OVERSEER'S EMPLOYMENT CONTRACT — PROPORTION OF CROP—EXPENSES.

Where a planter fails to insure his crop, in which his overseer has an interest, he cannot charge the overseer for an insurance premium never paid on the ground that he assumed the risk of the loss of the crop.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 90-102; Dec. Dig. § 73.*]

6. APPEAL AND ERROR (§ 749*)—ANSWER TO APPEAL.

Where an answer to an appeal has not been timely filed, the appellee is without right to question any part of the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3065-3073; Dec. Dig. § 749.*]

7. MASTER AND SERVANT (§ 73*)—OVERSEER'S EMPLOYMENT CONTRACT — PROPORTION OF CROP—PERMANENT IMPROVEMENTS.

The planter who has agreed to give his overseer a percentage of the proceeds of his crop as part of his salary cannot charge the overseer with a proportion of the money expended by him for permanent improvements, but the planter is entitled to a sum which represents the value of their use and the amount of their depreciation.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 90-102; Dec. Dig. § 73.*]

8. PROCESS (§ 79*)—SERVICE—SUFFICIENCY.

Service made on a defendant by handing the citation to one residing on the plantation of the defendant and in charge of his house is a valid service, although at the time that it is made the defendant is absent from the parish.

[Ed. Note.—For other cases, see Process, Cent. Dig. § 91; Dec. Dig. § 79.*]

9. LIMITATION OF ACTIONS (§§ 118, 119*)—SUSPENSION OF PERIOD—PRESCRIPTION—COMMENCEMENT OF ACTION.

The facts do not sustain the plea of three years' prescription filed by the defendant.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 527, 528-535; Dec. Dig. §§ 118, 119.*]

On Application for Rehearing.

10. LIMITATION OF ACTIONS (§ 118*)—PLEA OF PRESCRIPTION—REVIEW.

A plea of prescription filed in the Supreme Court will be overruled, where it appears from the record that plaintiff's suit was instituted

and the defendant excepted to the demand and answered within the prescriptive period.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 527, 528; Dec. Dig. § 118.*]

11. APPEARANCE (§ 20*)—EFFECT—WANT OF CITATION.

The voluntary appearance of a defendant supplies or cures the want of citation.

[Ed. Note.—For other cases, see Appearance, Cent. Dig. §§ 91–102; Dec. Dig. § 20.*]

Appeal from Twentieth Judicial District Court, Parish of Terrebonne; R. B. Butler, Judge ad hoc.

Action by William B. Sharp against James M. McBride. From a judgment for plaintiff, defendant appeals. Modified and affirmed.

Howell & Caillouet, of Thibodaux, for appellant. Beattie & Beattie, of Thibodaux, for appellee.

BREAUX, C. J. This is the second suit brought by plaintiff against defendant on a verbal contract, in accordance with which plaintiff engaged himself to render services to defendant as overseer and manager.

In the first suit he claimed $1,200 for the year's services, which he recovered. In the present suit he claims 10 per cent. on the net profits on the plantation made in 1905. His portion of the profits he claims amounts to $5,000.

Defendant in the present suit excepted to plaintiff's suit on the ground that on March 25, 1905, the plaintiff filed suit (which was the first suit to which we have referred before) asking for $1,200 as salary for the year, and averred that plaintiff in this suit asked for less than is now claimed under the contract before mentioned. That, having obtained judgment for the lesser amount which he chose to claim, plaintiff has no ground upon which to recover a further sum. That he might have in the first suit recovered the additional amount, if any was due. That he might have introduced his evidence and recovered judgment for all that was due him.

That the contract being the same, also the cause of action, he cannot now recover.

Plaintiff, on the hearing of defendant's exception, offered evidence, part of which consisted of the petition in the first suit, in which he alleged that at the beginning of the year 1905 he took charge of defendant's plantation in accordance with a verbal agreement, which is the same as the contract mentioned above. Plaintiff avers that, while he was in defendant's field busy directing the work, he was notified to return to the sugar house, and that on his return he met the defendant, who, as he (plaintiff) alleged, arbitrarily discharged him. That he thereupon asked for a settlement, which defendant refused to make and instead proposed to pay him $100 for all services rendered to the date of the discharge.

Plaintiff alleged further that he had averred in his petition in the first suit that he could not obtain a judgment for the net profits because it was not possible at the time he was discharged to fix the amount of the profits for the year 1905. He brought his suit early in the summer, the crop had just been pitched, and the amount of net profits it would bring was not at that time by any means a certainty.

Plaintiff also averred that he is an overseer and manager of plantations; that he was thrown out of employment and could not find anything to do.

He asked for judgment for the $1,200, and also asked to have his right to the 10 per cent. net profits of the crop of 1905 reserved.

This exception was overruled.

Defendant then pleaded the general denial and made certain admissions, such as that he had employed the plaintiff as his overseer at a hundred dollars per month and that he was led to believe that he would be relieved from all anxiety and worry; that he was a competent and good manager and in every respect that he would give entire sat-

isfaction, but that he soon discovered that this was not true. But, on the contrary, the plaintiff was incompetent and not qualified to take charge of the plantation; that all of his promises in regard to his usefulness as overseer and manager amounted to nothing. He mentioned a number of grounds to justify the discharge, which we will not detail at length, for we consider that the question of his discharge and want of justification therefor was put at rest by the decision in the first suit. Defendant also alleged that he continued to retain control and direction of his plantation as he did not wish to entirely surrender all authority until he had acquired entire confidence in the plaintiff. That it was while exercising the authority of an owner that he discovered the error he had made in employing the plaintiff.

### The Exception.

[1] The 10 per cent. on the net profits claimed, which defendant contends plaintiff has lost by not alleging and proving the amount of the profits in the first suit, is the ground alleged in the first exception filed in this case. Another exception was filed on appeal which we will consider later.

No question but that plaintiff sought to have the right reserved to recover the amount in another suit subsequent to the first. Although the plaintiff had asked to have the right to the net profits reserved, the judgment of the district court is silent in regard to it. Also the judgment of the Court of Appeals. When the question came up before this court, there was no mention made of this right which the plaintiff wished to have reserved. In fact it was not an issue in any way.

Taking up the question of the finality of the judgment heretofore rendered, we have noted that the plaintiff demanded all that was due him at the time which it was possible for him to recover, and as to the balance, the right which he was anxious to have reserved, he gave reasons for not demanding it at that time, viz., that it was not susceptible of proof; there was no telling just then how much the crop would bring at the end of the season; that while growing it had no marketable value; and that was not the profit intended under the terms of the contract.

Unquestionably the net profits could not be due and exigible at the date the first suit was brought. In consequence, this amount was due at a different time and demandable separately from the fixed amount which had already been paid. The article of the old Civil Code (2060) is quite clear and pertinent. It excepts sums due at different times and demandable separately. It requires all demands to be made at one time under one contract and for all amounts due under one contract; but amounts not demandable when suit is brought are not lost by not including them in the suit.

Had plaintiff sought to recover the amount in the first suit, he would not have been able to make the required proof.

The decisions cited by defendant in support of his exception are different in their facts. In each of these decisions the creditor demanded less than the amount due and exigible under the same contract, although it was possible to have demanded the whole amount, and different from the present suit in which it would not have been possible to prove the sum which could only become due thereafter.

We have examined the decisions cited and not in a single instance does it appear that the amount demanded in those cases was not susceptible of proof. We are therefore of the opinion that the exception was properly overruled.

### On the Merits—The Onus of Proof.

[2] As to where the onus of proof lies is the next question for our consideration. It

rests with the defendant. It is true that the burden was on the plaintiff to prove what the contract contained and the essentials for recovering judgment. But plaintiff was entitled to 10 per cent. of the profits after deducting expenses. Those expenses made by the defendant, of which he kept a record, it devolved upon him to prove. They were the defendant's account, the correctness of which it devolved upon him. He kept books and had knowledge of the facts. The one who has the knowledge of facts and who propounds an affirmative issue should prove them. One of the solvents is: If defendant fails to produce evidence, who will be the loser? Here it is very evident that without evidence defendant would have been the loser. The duty of producing evidence may shift. In this instance it had in the course of the trial shifted to the extent before mentioned.

[3] The next question is whether the sale of the crop made by the defendant to his son during the year should be the basis for ascertaining the amount due to plaintiff. The sale from father to son was made in the early part of November, 1905, while the crop, it was stated in argument, "was in marketable form before the case was tried."

We have arrived at the conclusion that it is not possible to take the private sale in question as the basis of settlement. With candor, defendant owned that the purpose in making this sale was to obviate the necessity of keeping an account and of having to produce an account if called upon by the plaintiff on the trial.

Defendant, having given an undivided tenth of the profits, interested Mr. Sharp to an extent that conferred upon him the right to object to a private sale of the crop. The son made no actual payment of the price. While it is true that it was sold at the market price of sugar and molasses on the public markets of New Orleans at the time of sale, less the costs of shipping and selling, it remains that, despite the right of the defendant to dispose of that which belonged to the plaintiff of his own, he could not dispose of that which belonged to the plaintiff in any other manner than crops are disposed of usually. It is not the usual way that crops are disposed of, and it is not at all probable that either party at the time the contract was entered into thought for an instant that the defendant would sell his whole crop to his son. While it is proven that at times planters dispose of their crops as the defendant did, it is common knowledge that crops are nearly always sold in open market, and nothing suggests that in this instance it should have been different.

[4] Having decided the issues as above stated, we take up the question of the net profits (presented in the alternative by defendant) made on the crop to the end of ascertaining the amount due to plaintiff.

The contention of defendant is that he held the crop for a considerable time in order to obtain a better price; that the amount allowed plaintiff, if any amount be allowed, should be calculated upon the actual amount for which the crop sold in the New Orleans sugar market six months after it had been manufactured; and that, since plaintiff is to share in the benefit obtained by the delay, he should bear his proportion of expenses for holding the crop.

It occurs to us that that is fair, and we will, in ascertaining the different amounts, take those expenses in consideration and allow those which in our opinion should be allowed.

Considering the facts and the circumstances, unquestionably defendant made advances to plant, cultivate, and gather the crop as well as manufacture the cane into sugar. The amount advanced must be fixed and the interest it bears. There seems to be no question about the amount. We take it as fixed by the judgment of the district court.

We take up the rate of interest on the amount. Plaintiff alleged that it was agreed that defendant should furnish the supplies with which to make the crop; 8 per cent. to be allowed, to quote from the petition. The judge of the district court allowed interest from the 1st of January to the 1st of November, which we think is correct. As just above stated, plaintiff alleged in his petition that defendant, according to the agreement, "was entitled to 8 per cent. interest." The testimony in addition shows that he is entitled to that interest for expenditure in cultivating the crop. This is the amount upon which the judge of the district court allowed interest at the rate of 8 per cent. He also allowed interest upon the labor and supply account from the 1st of February to the time that the crop was sold. We think that this item is also correct and that it was proper to reduce the percentage to the rate ·of 5, for the evidence does not prove that it was ·in contemplation to pay interest after the crop was manufactured into sugar, but, as plaintiff was benefited by delaying in selling the crop, it is just that he should pay interest during that delay that he held the crop for a better price.,

As to the interest for the three months, that also, if any interest be allowed, must be reduced to 5 per cent., because it does not seem that it was not covered by the allegation in the petition nor by the testimony.

The defendant positively limited in his testimony the interest at 8 per cent. to November 1, 1905.

We are informed that the theory of the district judge in not allowing interest during these three months was that the expenses for grinding are not paid until the end of grinding, in this instance to January 30, 1906.

The difficulty in allowing interest for these three months is that we have not the necessary data. The record shows, as per pay roll for October, November, December, and January, $22,278.80. This roll cannot be taken for the calculation because it includes October. It does not appear what the exact amount which was expended for labor in the other three months was. The expenses of October were counted with the expenses of the other three months in so far as relates to labor account. It does not appear how much was expended for the three months.

[5] Taking up the next contested item, it relates to fire insurance on the sugar house and the crop of sugar and molasses. This property was not insured at all nor premium paid of any kind. Defendant claims that, inasmuch as he usually insured his own property and his own crops, he is entitled to insurance. We cannot agree with that view. The claim has no basis. It is a mere speculation as to the benefit conferred, for which defendant did not pay anything. Had premiums been paid, there would be a proper item of expenses. Assuming a risk of fire under the circumstances of this case would not create an indebtedness on the part of one who has a fractional interest in the net profits. The good fortune of defendant in having escaped loss by fire cannot be capitalized and an amount obtained from his partner in the manner proposed in the absence of all agreement.

[6] The next item relates to two small amounts paid, one a subscription to the Cane Growers' Association and the other to the Immigration Bureau. These amounts cannot be questioned by plaintiff for the reason that no objection was made to these items in plaintiff's answer to the appeal, and, even if we were to consider the grounds alleged as sufficient to retain the right to reject, it would serve no purpose, for the answer to the appeal was not timely filed. It was filed entirely too late, months after the time in which the answer to the appeal should have been filed had elapsed.

The appellant, on the other hand, can be heard because he is not bound by any such rule.

His contention is that there was an error of $75 committed in the judgment appealed from. It was, we judge, an oversight and will have to be deducted.

The next disputed item is for $1,500 for 75 acres of seed cane. Seed cane was put down less than was necessary to plant a similar number of acres as had been planted in 1905. If a like number of acres of cane had been put down as was put down in 1905, there would have been just that number less for grinding than there was actually ground, for which plaintiff now receives an accounting. This was allowed by the judge of the district court, and, as plaintiff did not in time urge complaint against the item, it will remain as was found heretofore. The defendant was entitled to put down the seed cane as he chose to do. The judge of the district court, after having considered the matter, fixed the amount at $12 an acre for this cane in windrow. We infer that this is a correct amount and will pass to the next point.

Objection is urged by defendant because this cane, amounting to 375 tons, was worth more than the amount allowed. The defendant paid a Mr. Le Blanc for his cane the amount which was allowed in this instance. Objection is urged on the ground that there were special reasons for increasing the amount of this claim. We have read those reasons and they are not convincing. We will leave the amount as heretofore found by the district judge, and that was $2.85 per ton.

[7] We come now to the cane derrick and fuel tanks which give rise to another complaint.

Defendant charged for the derrick $3,310 and $1,514.32 for the costs of the oil tanks. This was properly not allowed. As to the de-terioration or depreciation of the derrick, to wit, $3,310, the loss in value of the oil tank, $1,514.32, or the 16 mules, $3,760, or 2 mules, $312, or 2 cane loaders, $586, which the defendant claims as expenses for the year 1905, they also were properly, as we think, not allowed as they were improvements on the place which remained with the place and in which plaintiff had no interest as an owner. In the first defendant charged for the price or value of the foregoing improvement. This was not allowed.

The judge, however, properly allowed an amount for their use and depreciation, which was carried in the expense account. Ten per cent. depreciation was allowed on the derrick and oil tank; 50 per cent. on the cane loader. This has the appearance of being fair and will remain charged as it is.

It seems to us that it was the correct method to charge the wear and tear on the cane derricks, oil tanks, mules, and other similar property. This amount was fixed at 10 per cent., properly enough, we think. This proportion of the expenses was properly charged to the crop of 1905.

It seems to us that the item headed Mitchel Le Blanc claim was as justly settled as it was possible to settle it. The cane bought had been charged to the partnership's account and settled as a partnership claim.

The salary of Donis McBride reduced from $1,000 to $500. We have found no good reason to change it.

### Prescription.

[8, 9] There is no merit in the plea of prescription filed on appeal. The citation had been served on the plantation; besides, personal service had been made on the defendant in the city of New Orleans. The certified copy of the return on the citation to the defendant shows that the service was made by handing the papers to Charles Deiber, a person of age, who had charge of defendant's dwelling.

The defendant was absent from home. The officer adds:

"I being informed by said Charles Deiber that J. M. McBride was then temporarily away with his family, and while he (the said Charles Deiber) did not live in the domicile and residence of defendant, he was, as he informed me, in charge of the same and was at the time of making this service at and in the domicile of J. M. McBride."

In addition, defendant was personally served with required papers in the city of New Orleans.

We take it, after reading the papers, that the one upon whom the papers were served was a resident on the plantation.

It has been held that service on the overseer is sufficient. Maxwell v. Collier, 6 Rob. 86.

To the same effect is Succession of McCallop, 10 La. Ann. 225; Rousseau v. Gayarre, 24 La. Ann. 355.

Moreover, the three years' time pleaded in support of the plea had not elapsed at the date that defendant first filed an appearance in the suit.

Again, even if not sufficient and defective, it interrupted prescription, as will be made evident by the following precedents: Leon v. Bouillet, 21 La. Ann. 651; Sorrell v. Laurent, 27 La. Ann. 70; New Orleans Canal & B. Co. v. Tanner, 26 La. Ann. 274; Martinez v. Vives, 30 La. Ann. 818.

Although there is one authority to the contrary, expressed in a sentence which may be deemed as slightly obiter, we are not inclined to the view that the personal service on one away from his domicile but in the state is not sufficient to interrupt prescription.

The defendant cannot gather comfort from Carrere v. Aucoin, 122 La. 258, 47 South. 58, nor s. c., 127 La. 62, 53 South. 427, neither of which is in point.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is amended by deducting 10 per cent. of $75 from the judgment, leaving amount of the judgment to $1,480.73. With this amendment the judgment of the district court is affirmed; costs of appeal to be paid in the proportion of nine-tenths by defendant and one-tenth by plaintiff.

### On Application for Rehearing.

LAND, J. [10] Defendant filed in this court a plea of the prescription of three years and contends that the two citations served on the defendant did not interrupt the current of prescription.

The petition of the plaintiff was filed on January 15, 1908. On January 30, 1908, defendant appeared and excepted to plaintiff's demand. This exception was taken up, evidence adduced, and was overruled. On June 14, 1909, the defendant answered to the merits, and in due course the case was tried and judgment rendered in favor of the plaintiff.

Plaintiff's cause of action did not arise until after the sale of the crop was completed in July, 1906. It follows that the petition, exception, and answer were filed within the three years. A defendant cannot "make an appearance and at the same time urge a want of citation." City of New Orleans v. Hall, 21 La. Ann. 439.

[11] In the Tutorship of Minor Heirs of Byland, 38 La. Ann. 759, the court said:

"The appearance of the attorney supplied or cured the want of citation. Le Blanc v. Perroux, 21 La. Ann. 27; New Orleans v. Walker, 23 La. Ann. 803; Bartlett v. Wheeler, 31 La. Ann. 540; Succession of Baumgarden, 35 La. Ann. 130."

As after his voluntary appearance in the court a qua the defendant could not have excepted to the citation, it follows that he cannot urge in the appellate court an objection that the citation was not properly served.

For these additional reasons we hold that the plea cannot be sustained.

The merits of the case were carefully considered by the judge a quo, and we see no good reasons for reversing his findings.

Rehearing refused.