(74 South. 711)

No. 22181.

REHAGE v. HAYFORD.

(March 12, 1917.)

*(Syllabus by the Court.)*

PROCESS ☞78—SERVICE—STATUTE—"HOUSE" —"LIVING IN THE HOUSE."

Code of Practice, art. 187, declares that citations and petitions may be served in either of two ways, to wit, "by being delivered to the defendant in person, or by being left at his domicile," and (article 189) that "it [the service] is made at the domicile when the copies of the citation and petition are left at the usual place of domicile or residence of the defendant, if he be absent, by delivering them to a person, apparently above the age of fourteen, living in the house." It is not to be supposed that it was the intention that a person having a place of residence other than a house, such as a tent, a boat, or an apartment in a house, should be exempted from domiciliary service because such "place" is not a "house," or, upon the other hand, that a person living in apartments should be bound by service of process directed to him, but delivered to a stranger living in the house, but in another of the apartments. If, however, such service can only be made upon a person "living in the house," as provided in the last clause of the article quoted, persons not living in houses and occupying the whole of them are exempt therefrom; and, if any person living in the same house with another may receive service of process for him, then such other person may be bound by the act of a stranger of whose existence he is ignorant. The meaning intended to be conveyed by the word "house," as used in the last clause of the article, is clearly, therefore, "place of domicile or residence," as used in the first clause, since it is at that "place"

that the service is to be made, and it cannot be so made upon a person "living in the house" if the "place" be not a house, and it should not be so made if the defendant and the person upon whom it is made, though living in the same house, are strangers to each other.

[Ed. Note.—For other cases, see Process, Cent. Dig. § 90.

For other definitions, see Words and Phrases, First and Second Series, House.]

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by Miss Virginia M. Rehage against Eugene S. Hayford. Judgment against defendant by default, and from a judgment setting aside the default, plaintiff appeals. Affirmed.

E. M. Stafford, Henry W. Robinson, and Daniel Wendling, all of New Orleans, for appellant. Carroll & Carroll, of New Orleans, for appellee.

Statement of the Case.

MONROE, C. J. This is an appeal from a judgment setting aside a default on the ground that defendant had not been cited, and that the sheriff's returns purporting to show citation were untrue; the claim sued on having in the meanwhile, it is said, become barred by the prescription of one year.

It appears that the petition in the case, accompanied by interrogatories on facts and articles, was filed on January 27, 1916, that copies of those papers, with citation addressed to defendant, were issued on the same day, and that, on the following day the deputy sheriff made a return to the effect that he had served the citation and copies on defendant in person, the facts, however, as developed on the trial of the rule to set aside the default, being as follows:

There stand at the corner of St. Charles and Julia streets, fronting on St. Charles and extending back on Julia street, an aggregation of buildings that were formerly occupied as a residence, but which, having been leased to a realty company, and added

to, divided, and altered, are now subleased by that company to different tenants for different purposes, the divisions on the ground floor, which is rather a half floor, or basement, as garages, bicycle shops, pressing clubs, etc., and the upper floors to defendant, who in turn subleases the apartments into which they are divided, save those in which he and his family reside, to different tenants, as residences. The main building fronts on and bears the number 805 St. Charles street, and defendant's apartments are on the second floor (being the floor above the basement, and sometimes called the first floor) of that building, as are also the apartments of several other tenants. In the rear of the main building, and separated from it by a fire wall, is a building which fronts on and bears the numbers 714 and 716 Julia street, the apartments upon the upper floors of which at the time of the occurrences which concern this case were leased by the fortnight to Mrs. Stenzer, who, with Walter E. Weber, her son, occupied them as their residence.

The Julia street apartments have a separate entrance on that street, but may also be reached by passing through the hall of the main building and crossing the gallery in the rear of the same; the hall being accessible from St. Charles street by means of steps which rise above the basement. Mrs. Stenzer, either by herself or through servants employed by her, attended to her own apartments, received no domestic service in connection with her lease, paid her rent to defendant, and knew very few of the other tenants.

It is shown beyond dispute that a citation issued on January 27th directed to defendant, and, together with copies of the petition and interrogatories, was served on Weber while he was lying sick in bed in the apartments thus mentioned, and that the name of the defendant was not mentioned by the deputy sheriff who made the return of personal service on defendant to which we have referred.

It is also shown that after the rule taken by defendant to set aside the default had been twice fixed for trial, and was then fixed for March 3d, another return of service was made (on March 2d, upon a citation that was issued on February 23d) to the effect that the citation had been received on January 27th, and served on defendant on January 28th, by leaving the same at his domicile, 805 St. Charles street, "in the hands of Walter Weber, a person apparently over the age of 14 years living and residing in said domicile, whose name and other facts" connected with the service were learned by interrogating said Weber, the defendant being absent at the time. The trial of the rule was then continued to March 10th, and defendant in the meantime filed another rule, including the second return in his attack, and on that day the sheriff, through counsel, requested that the return on the citation of February 23d be considered a corrected return of the citation of January 27th. The case was then submitted, and thereafter the sheriff, through counsel, filed a motion alleging that the citation and return filed on March 2d were filed improvidently and through error, asking that it be considered withdrawn, and tendering a supplemental return in the form of an affidavit in its stead. The affidavit made by the deputy sheriff sets forth that he received the citation, petition, and interrogatories on January 27th, and on January 28th, made service thereof on defendant at his domicile, 805 St. Charles street, by handing same to Walter Weber, "a person over the age of 14 years residing on said premises, said defendant being absent therefrom at time of said service, as this affiant found to be the case by going into the said premises and looking for defendant in the building," etc.

The motion and affidavit, having been filed long after the submission of the case and ex parte, cannot be considered in the determination of the issue presented, and need

not be, as it would not affect the result if considered.

## Opinion.

The theory of personal service having no support in the facts, the remaining question is whether there has been domiciliary service, and, though plaintiff's counsel argue in support of the affirmative of that question, we are of opinion that the negative is the better sustained by the law and the reason of the law.

The law declares that citation may be served on a defendant in either of two ways, i. e., by being delivered to him in person, or, by being left at his domicile (C. P. art. 187), and that (C. P. art. 189):

"It is made at the domicile when the copies of the citation and petition are left at the usual place of domicile or residence of the defendant, if he be absent, by delivering them to a person, apparently above the age of fourteen, living in the house."

But the usual place of domicile may not be a house, or all of a house, or, on the other hand, it may be constituted of an aggregation of houses. Thus one person may choose for such purpose a cave, a tent, a boat, a box car, or a particular part of a house, the other parts of which have been chosen by other persons for a like purpose or for purposes of business, and another person may establish his family in several tents, boats, or box cars, or may erect for their accommodation or for the accommodation of his guests, his domestic servants, or others houses apart from that in which he himself may choose to reside, alone.

From which it will be seen that, if the provision of the quoted article to the effect that, in the absence of the defendant, the service is to be made by delivery of the citation to a person "living in the house," be literally interpreted, the main purpose of the enactment—i. e., to provide for domiciliary service—will be defeated in all cases where the defendant does not reside in a house,

and in those instances in which he resides in part of a house, while others reside or transact business in other parts, he may be held bound by a citation delivered to a person living in the house, but who is wholly unconscious of and indifferent to his existence. The law requires interpretation, therefore, in order to give it the effect intended, since it is not to be supposed that it was intended that a person having a place of domicile and residence should be exempted from domiciliary service because such a place is not a house, or that a person living in an apartment in a house divided into many apartments occupied by different persons should be bound by service of process directed to him, but delivered to an entire stranger living in the house, but occupying another apartment. The intention to authorize domiciliary service is declared in article 187, and, since article 189 declares that such service is made by leaving copies of the citation and petition at the usual place of domicile or residence of defendant, and, since, as we have seen, a defendant may occupy as his usual place of domicile or residence a place other than an entire house, it follows that the difficulty in the matter arises from the requirement that the copies shall be delivered to a person living in the "house," and we are therefore to consider the reason and meaning of that requirement, and they are not far to seek. Manifestly the reason is because the fact that one person lives in the same house with another will in most instances authorize the presumption that there exists between the two a relationship, either of blood or amity, or arising from contract or common interest, from which it may be deduced that the one who is found in the common dwelling, in the absence of the other, is vested by such other with authority to receive for him such messages, notices, packages, and papers as may be intended for him and are there delivered. The meaning intended to be con-

veyed· by the word "house," as used in describing the person to whom the citation may be delivered, is clearly, therefore, "place of domicile or residence," as used in the first clause of the sentence, since it is at that "place" that the citation is to be served, and it cannot be so served upon a person "living in the house" if the place be not a house, and it should not be so served if the defendant and the person upon whom the service is made, though living in the same house, are strangers, and bear no more relation to each other than though they lived in different parts of the world.

In Sparks v. Weatherby, 16 La. 595, 596, it appeared from the sheriff's return that the citation had been delivered at the usual domicile of the defendant "to C. W. Bibb, a free white person apparently above the age of 14," and this court, after considering some other matters, said:

"But there is another defect in this return. It does not show that the person in whose hands the citation was placed was living in the house. This would be fatal, even if the place was that of the usual abode of the defendant; for the person intrusted with the writ might happen to be an entire stranger accidentally in the house, and likely to have no communication with the defendant."

On the other hand, in Maxwell v. Collier, 6 Rob. 86, Succession of McCalop, 10 La. Ann. 224, and Rousseau v. Gayarre, 24 La. Ann. 355, it has been held that service of process within the inclosure of a plantation upon a person there living, though not in the house occupied by the person to whom the process was directed, was sufficient, a doctrine which we do not at this time find it necessary to affirm, the cases being cited merely because they sustain the theory of a presumed relationship between the person to whom a citation is directed and the person to whom it is delivered, as arising from the fact of a common domicile. ·

In the instant case the first return made by the deputy sheriff showing personal service on defendant is admitted to have been untrue, as is also the second return, showing the service on January 28th of a citation that was not issued until February 23d following. If the last return, showing service on Weber, "a person over the age of 14, residing on said premises," could be considered at all, we should say: First, that "premises" may include a mill or university settlement, where there are hundreds of houses; and, second, that the evidence clearly shows that Weber was not living at "the usual place of domicile or residence" of the defendant, nor was he living in the same house, and that he was utterly without authority, actual or presumptive, to represent or bind him in receiving the service.

We therefore find the judgment appealed from to be correct, and it is accordingly affirmed.

SOMMERVILLE, J., concurs.